IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

AMAYA MARIE TOVAR,
aka BRYAN LEE TOVAR
       Plaintiff,

v.                                                    Case No. 2:23-cv-00067

CYNTHIA PERSILY, Cabinet Secretary,
West Virginia Department of Human Services, *et al.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the following motions: a Motion to Dismiss filed by the West Virginia Department of Health and Human Resources, Sherry A. Young, and Matthew Christiansen (ECF No. 13)[1]; Plaintiff's Petition to Amend Birth-Assigned Sex Designation and Birth-Assigned Name on Birth Certificates and Social Security Card (ECF No. 15); a Motion to Dismiss filed by Phylis Smith (ECF No. 25); and a Motion to Dismiss filed by Martin J. O'Malley (ECF No. 29). By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation

---

[1] During the pendency of this civil action, the West Virginia Department of Health and Human Resources has undergone a reorganization into three separate departments. As relevant here, the department with oversight of the Vital Registration Office, the repository of official birth records, is the Department of Human Services, which is presently overseen by Cabinet Secretary Cynthia Persily, who was substituted as a defendant in place of Sherry A. Young pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Accordingly, this pending motion to dismiss will be treated as being filed by the West Virginia Department of Human Services ("DHS"), Cynthia Persily, and Matthew Christiansen, as State Health Officer and Commissioner of the Bureau for Public Health (collectively "the DHS Defendants"). The Court will hereinafter refer to this motion as "the DHS Defendants' motion to dismiss." Similarly, Martin J. O'Malley, the current Commissioner of the Social Security Administration, was substituted for the previous Commissioner initially named in Plaintiff's complaint prior to the filing of O'Malley's pending motion to dismiss.

for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN,** and I will proceed to rule on the pending motions.

## I.  Plaintiff's Allegations and Pending Motions.

On January 27, 2023, Plaintiff, who identifies as a transgender female allegedly suffering from "gender dysphoria" and/or "gender identity disorder" ("GID"), who is also a convicted felon required to register as a sex offender, filed the instant Verified Complaint under 42 U.S.C. § 1983 seeking a declaration that the State of West Virginia's name change statutes violate her rights under the United States Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Plaintiff also seeks injunctive relief in the form of a court order directing the defendants to change the name and sex designation on Plaintiff's birth certificate and social security documentation. Specifically, Plaintiff alleges that it is in her best interest that her assigned sex and name be changed on these documents "to match her lived female gender identity appearance" and that these changes are "an essential part of the standard medical treatments for Plaintiff's gender dysphoria as recognized by the national and international medical and psychiatric communities." [ECF No. 1 at 5].

As addressed in the complaint and the defendants' motions, under West Virginia law, a name change may only be granted through a petition for a name change filed in either the circuit or family court of the county in which the petitioner resides (and has resided for more than one year), or for a non-resident of

the county, where the petitioner was born, married, and resided for at least 15 years. *See* W. Va. Code § 48-25-101, *et seq*. However, while these state statutes governing change of name do not specifically exclude name changes for transgender persons, they prohibit a name change for anyone convicted of a felony, or anyone required to register as a sex offender, during the required period of incarceration or registration, or for a particular period after release from incarceration or parole for certain criminal offenses. *See* W. Va. Code §§ 48-25-101(a)(5) and (8) and 48-25-103(b), (c), (d), and (e). Plaintiff's complaint challenges this prohibition stating:

> Amending the birth-assigned name and sex as listed on her birth certificates and social security card will not undermine the state's interest [in] accurately identifying the Plaintiff, due to the fact that when Plaintiff registers with the W. Va. State Police as a sex offender upon her release, she will have to provide her full name, including any aliases, nicknames, or other names used by the Plaintiff at the time of registering. W. Va. Code § 15-12-2(d)(1).

[ECF No. 1 at 9]. In pertinent part, the complaint further claims that:

> [T]he circuit courts of the State of West Virginia are enforcing this law, which clearly is denying the Plaintiff equal protection of the laws, as well as depriving her of life, liberty, and property without due process of law, by not allowing her to petition the circuit court of the county in which she was born/resides/resided for a sex and name change on her W. Va. birth certificates and social security card to match her lived female gender expression of identity.

[*Id.* at 11].

Without further specific facts, Plaintiff alleges that she has suffered a "concrete injury" through the decision to deny her application for a sex and name change on her birth certificate and social security card under these state statutes. [*Id.* at 13]. Plaintiff's response brief clarifies that, on July 31, 2023 (seven months

3

after she filed the instant complaint), she filed a petition for a name and gender marker change in the Family Court of Cabell County (her county of birth), which was denied on August 23, 2023. [ECF No. 21 at 1; ECF No. 21-1 at 1-3]. The order denying Plaintiff's petition indicates that it was denied for failure to comply with W. Va. Code § 48-25-101 because Plaintiff "is currently incarcerated and has multiple felony convictions which require him to register as a sex offender upon his release from incarceration." [ECF No. 21-1 at 2]. However, Plaintiff's complaint does not allege any facts concerning her attempts to change the sex designation on her birth certificate or social security card, which, as addressed in further detail below, is subject to different administrative procedures unrelated to the name change petition process.

Nonetheless, Plaintiff's complaint alleges that "[t]he deprivation of the right to petition a circuit court for a sex and name change on Plaintiff's birth certificates and social security card to reflect her lived female gender expression of identity is precisely the sort of irreparable injury that satisfies the injury in fact requirement." [ECF No. 1 at 11]. Thus, Plaintiff's complaint seeks a court order requiring the DHS Defendants, Phylis Smith, the former Clerk of Cabell County, and Martin J. O'Malley, the current Commissioner of the Social Security Administration, to amend Plaintiff's birth certificate and social security documents to modify her male

4

sex to female and to change her name from "Bryan Lee Tovar" to "Amaya Marie Tovar."[2]

On September 8, 2023, the DHS Defendants filed a Motion to Dismiss asserting that, for the purposes of this civil action, they are not "state actors" under § 1983 because they do not have the legal authority under state law to effect the changes that Plaintiff seeks, which may only be granted by the appropriate circuit or family court as addressed above. [ECF No. 13 at 3-4]. On a related note, the DHS Defendants further assert that Plaintiff lacks standing to sue them because she has not suffered an injury that is "fairly traceable" to their actions. [*Id.* at 4-8].

On November 22, 2023, Plaintiff filed a "reply" in opposition to the DHS Defendants' motion (hereinafter "Plaintiff's response") citing to various decisions which she asserts demonstrate that blanket bans on name changes based upon transgender status and criminal history have been held unconstitutional. [*Id.* at 2-3]. Plaintiff emphasizes that the failure to allow these proposed changes to her identity documents is interfering with her medical and mental health treatment and places her at "a substantial risk for serious irreparable psychological harm while serving no legitimate purpose." [*Id.* at 3]. She further speculates that she is "a high risk of being discriminated against" and suffering "hate violence" without the requested changes to her identity documents. [*Id.*] She contends that she is seeking the requested relief for no purpose other than to "promote her health and

---

[2] In her subsequently filed "Petition to Amend Birth-Assigned Sex Designation and Birth Assigned Name," Plaintiff appears to have again modified her proposed name change to "Amaya Marie Shultz." (ECF No. 15, *passim*).

safety." [*Id.* at 3-4]. Plaintiff's response, however, wholly fails to address the DHS Defendants' standing arguments.

On December 6, 2023, Defendant Smith filed a Motion to Dismiss asserting that she is no longer the Cabell County Clerk, and, at any rate, her office has no responsibility for changing birth certificates; rather, the office is merely the keeper of official county records in accordance with all laws and regulations. [ECF No. 25 at 1]. Smith maintains that the DHS Office of Vital Statistics[3] is responsible for the actual data. [*Id.*] Thus, Smith asserts that Plaintiff's requested relief is "not within the functioning of the Cabell County Clerk and/or is contrary to West Virginia Law." [*Id.*] On February 5, 2024, Plaintiff responded to Smith's motion asserting, without any factual detail, that Smith denied Plaintiff's petition for a name change and sex designation based on a discriminatory and unconstitutional state statute. [ECF No. 34 at 1-2]. Plaintiff's response otherwise repeats her assertions that the failure to allow these requested changes to her identity documents causes her psychological harm and mental anguish. [*Id.*]

Finally, on January 8, 2024, Defendant O'Malley filed a Motion to Dismiss [ECF No. 29] and Memorandum of Law [ECF No. 30] asserting that Plaintiff's complaint fails to state a plausible claim for relief against him or the Social Security Administration ("SSA") because Plaintiff's claims are barred by sovereign immunity or do not apply to the federal government, and further asserting that Plaintiff has not exhausted the required administrative remedies under federal law. On

---

[3] The proper name of this office appears to be the "Vital Registration Office," a branch within the "West Virginia Health Statistics Center," which is part of the "Bureau of Public Health."

6

February 5, 2024, Plaintiff responded in opposition to O'Malley's motion to dismiss, making a blanket assertion that she has a "legal right to have her name and sex designation changed on her social security card" and the failure to do so is causing her "mental anguish" and "psychological torture." [ECF No. 35 at 1-2]. Plaintiff further claims that she has written letters to the SSA to try to get the required forms to apply for these changes, but the SSA never responded. Thus, she summarily asserts that Defendants are "guilty of violating Plaintiff Tovar's constitutional rights [and are] also subjecting her to cruel and unusual punishment." [*Id.* at 2]. On February 9, 2024, O'Malley filed a reply brief repeating his argument that Plaintiff failed to exhaust her administrative remedies and asserting that she did not specifically contest any of his other grounds for dismissal. [ECF No. 36]. These matters are ripe for resolution and these arguments will be further addressed as necessary below.

## II. Standard of Review

Defendants' motions are filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

7

(2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the other hand, governs dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, a defendant may contend that a pleading "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. The court then assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection she would receive under Rule 12(b)(6). *Id.* Second, a defendant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg, & Potomac*

*R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the plaintiff, as the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp.2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Similarly, Rule 12(h)(3) of the Federal Rules of Civil Procedure permits a district court to dismiss a civil action at any time if it appears that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Duffield v. Memorial Hosp. Ass'n*, 361 F. Supp. 398 (S.D. W. Va. 1973), *aff'd sub. nom. Duffield v. Charleston Area Medical Ctr.*, 503 F.2d 512 (4th Cir. 1974); *see also Bolin v. Chavez*, 210 F.3d 389 (10th Cir. 2000) (permitting *sua sponte* dismissal for lack of subject matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure); *Dement v. W. Va.*, No. 2:20-cv-00388, 2020 WL 5502305, at *1 (S.D.W. Va. Sept. 11, 2020) (*sua sponte* dismissal under Rule 12(h)(3) for lack of subject matter jurisdiction).

### III. Discussion

    A.    Defendants are not state actors for the purpose of this § 1983 action and, therefore, Plaintiff lacks standing to sue these Defendants for a name change.

Plaintiff filed this civil action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

9

*Atkins*, 487 U.S. 42, 47 (1988). As noted by the DHS Defendants, "[g]enerally, a public employee acts under color of state law while acting in **his official capacity** or while exercising **his responsibilities** pursuant to state law." *Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981) (emphasis added); *see also Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). [ECF No. 13 at 3-4]. The DHS Defendants assert that, under state law, they "are not clothed with the authority to [grant] or deny Plaintiff's petition for a name change[;] nor is it their responsibility under state law to decide upon that request for Plaintiff or any other West Virginia resident, regardless of sex, gender, or criminal history." [*Id.* at 4]. Thus, "[i]n their official capacity, Defendants cannot effectuate this change for Plaintiff . . . [as they] are not tasked with implementing, enforcing, or interpreting this state law but are only able to respond to lawful orders by a West Virginia circuit or family court." [*Id.*] Consequently, to the extent that Plaintiff has alleged that the DHS Defendants have caused her an injury which this court may remedy, Plaintiff lacks standing to bring her claims.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Sommerville v. Union Carbide Corp.* No. 2:19-cv-00878, 2024 WL 2139394, at *5 (May 13, 2024). Thus, the standing doctrine "implicates the court's [limited] subject matter jurisdiction" under Article III of the United States Constitution. *South Carolina v. U.S.*, 912 F.3d 720, 726 (4th Cir. 2019) (quoting *Frank Krasner Enters. v. Montgomery Cty.*, 401 F.3d 230, 234 (4th Cir. 2005)). As noted by the DHS

Defendants, "[t]he standing doctrine ensures 'that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 578 U.S. at 338 (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). [ECF No. 13 at 5].

In assessing standing, the court accepts as true the allegations in the pleading that are supported by adequate factual matter to render them plausible on their face. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As noted above, Plaintiff bears the burden of proving that subject matter jurisdiction exists and if such jurisdiction is lacking, the claim must be dismissed. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Richmond, Fredericksburg, & Potomac R.R. Co.*, 945 F.2d at 768; *see also Arbaugh v. Y & H Corp.*, 546 U.S.500, 506 (2006). [ECF No. 13 at 5-6].

Article III standing requires a plaintiff to present "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "Each of the three standing requirements share a common purpose: 'to ensure that the judiciary . . . is the appropriate forum in which to address a plaintiff's complaint.'" *Sommerville*, 2024 WL 2139394, at *5 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)).

The injury-in-fact element is satisfied when a plaintiff shows "an invasion of a legally protected interest which is: (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Bush v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 124 F.Supp.3d 642, 651 (E.D.N.C. 2015). Furthermore, an injury is "fairly traceable to the challenged action of the defendant" when there is a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. For a claim to be redressable, "[a] plaintiff must show that the court has the power to grant the plaintiff's requested relief, and that such relief would redress the plaintiff's injury." *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020), *cert. denied sub nom Kopitke v. Bell*, 141 S. Ct. 1388, 209 L. Ed. 2d 129 (2021). "An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth*, 528 U.S. at 561). [ECF No. 13 at 6]. Using these parameters, I will address Plaintiff's standing to bring her claims against each of the defendants.

        1.    The DHS Defendants

The DHS Defendants assert that Plaintiff does not have standing to sue them concerning her name change prohibition, as her "alleged injury under that claim is not attributable to [them] since [they] are not vested with the authority to approve or deny a petition to change Plaintiff's name." [ECF No. 13 at 7-8]. They contend that Plaintiff's claim "fails in respect to the injury in fact and traceability requirements of the standing doctrine" and, therefore, "that claim is also not

redressable by this Court[,]" even to the extent that Plaintiff seeks declaratory relief concerning the constitutionality of the state statute. *See Comite de Apoyo los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993) ("By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong.") [*Id.* at 8].

The DHS Defendants further assert that Plaintiff also lacks standing to sue them concerning the change of her biological sex designation on her birth certificate because "there is no actual or concrete injury that was caused by the conduct of [those] Defendants." [*Id.* at 7]. Their brief asserts:

> [T]he West Virginia Health Statistics Center will change the sex listed on an individual's birth certificate upon the submission of a form which includes a physician's attestation that the individual's sex designation should be changed. The form for Plaintiff to do this is found on the West Virginia Department of Health and Human Resources' Health Statistics Center web page under "Sex Designation Form" [footnote with link to website omitted]. The Defendants are not prohibiting Plaintiff from changing the sex designation on their birth certificate. To the contrary, Plaintiff has access to the same procedure that anyone else has who wants to change their sex designation, in line with the Equal Protection Clause of the 14th Amendment, which requires "all persons similarly situated should be treated alike." *Grimm v. Gloucester Cnty. School Board*, 302 F. Supp.3d 730, 748 (E.D. Va. 2018), citing *Whitaker v. Kenosha United Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 [(7th Cir. 2017)] quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 [ ] 1985).

[ECF No. 13 at 7]. The DHS Defendants further contend that "[s]ince the State of West Virginia is not preventing Plaintiff from changing the sex designation on Plaintiff's birth certificate . . . no actual or concrete injury . . . is traceable to the conduct or lack thereof by the Defendants. That leaves this Court without any

13

injury to redress regarding this claim." [*Id.*] Nothing in Plaintiff's response sufficiently overcomes these deficiencies of fact.

I agree that Plaintiff has not established the required elements of standing for her claims against the DHS Defendants. To the extent that Plaintiff seeks relief from the DHS Defendants concerning the prohibition for a name change due to having been convicted of felony offenses and being required to register as a sex offender, the DHS Defendants have no authority to approve or deny the requisite petition to change Plaintiff's name. That authority lies with the circuit or family courts.[4] Thus, any injury in fact that Plaintiff has suffered from the state-law prohibition to change her name on her birth certificate is not fairly traceable to the DHS Defendants and is not redressable by this court. *See, e.g., Doe v. Holcomb*, 883 F.3d 971, 975-76 (7th Cir. 2018) (a plaintiff suing to enjoin a state statute must show that the named state official plays some role in enforcing the statute in order to avoid an Eleventh Amendment bar and, "in order to satisfy the requirements of causation and redressability, the plaintiff must also establish that his injury is causally connected to that enforcement and that enjoining the enforcement is likely to redress his injury. . . .")

I likewise **FIND** that Plaintiff has not established an injury in fact concerning a change to the sex designation on her birth certificate because it appears that she has not taken the necessary steps to request such a change to her birth certificate.

---

[4] To the extent that Plaintiff has alleged that her petition for a name change was denied by the Family Court of Cabell County, her remedy, if any, lies in a timely appeal of that decision to the appellate courts of the State of West Virginia, which are vested with the authority to review the constitutionality of state statutes under state and federal law.

14

As noted by the DHS Defendants, the State's Health Statistics Center will make such a change upon the filing of the designated form, available on its website, that must include a physician's attestation that the individual's sex designation should be changed. [ECF No. 13 at 6-7]. Plaintiff's complaint does not indicate that these administrative steps were attempted and that such request was denied, and there is nothing in the record to demonstrate that such steps were taken. Accordingly, Plaintiff has not established a concrete and particularized injury that is actual or imminent and, thus, her claim against the DHS Defendants seeking a change to the sex designation on her birth certificate is not ripe for review.

      2.     Phylis Smith

Although not specifically pled in her motion to dismiss, I further **FIND** that Plaintiff also lacks standing to sue Defendant Smith for her claims for relief concerning the change of name and sex designation on her birth certificates because neither Smith (who is no longer the Cabell County Clerk), nor her successor, have authority to make those prospective changes absent an order granting the name change by the appropriate state tribunal. Only then does state law require that a certified copy of the order be filed in the County Clerk's Office allowing the new name to be used. *See* W. Va. Code §§ 48-25-104 and 105. Smith's motion to dismiss asserts:

> [T]he County Clerk's Office is the official keeper of public records and ensures that the public records are retained, archived and made accessible to the public in accordance with all laws and regulations. The County Clerk does not generate birth certificates. The Office of Vital Statistics is responsible for the data.

15

[ECF No. 25 at 1]. Plaintiff's response incorrectly asserts that Smith "of the Cabell County <u>Court</u> denied Plaintiff her petition for a name change and sex designation . . . ." [ECF No. 34 at 1] (emphasis added). However, Smith was the <u>County Clerk</u>, which is entirely separate from the <u>Circuit or Family Court</u>. Thus, Smith played no role in the decision denying Plaintiff's petition for name change. Therefore, Plaintiff has not established the requisite requirements of an injury in fact that is fairly traceable to Smith's conduct and, thus, Plaintiff has no standing to bring her claims against Defendant Smith. *See Holcomb*, *supra*, 883 F.3d at 979 ("Because Doe failed to show that the Clerk has any authority in the name-change process, Doe has failed to show that his injury is fairly traceable to the Clerk's action of processing petitions.")

        3.     Commissioner O'Malley

Plaintiff has also sued Martin J. O'Malley ("O'Malley") in his official capacity as the SSA Commissioner, requesting that the Court order the SSA to amend Plaintiff's social security records to change her name and sex designation. [ECF No. 1 at 52]. However, it is readily apparent that O'Malley and the SSA play no role in the approval or denial of a name change under a state law that he has no authority to enforce. Thus, Plaintiff has no standing to sue O'Malley or the SSA concerning a challenge to the constitutionality of the state law. Nor may O'Malley or the SSA change Plaintiff's name in her social security records without the appropriate state court order granting the official name change.

To the extent, however, that the SSA has specific administrative procedures permitting the change of a sex designation in social security records, I will separately address the viability of that claim in section B herein. Likewise, to the extent that the DHS has its own separate administrative procedures for a change of sex designation that is unrelated to the name change issue, I will separately address that issue as well in section B.

> B. Plaintiff has not exhausted available remedies to effectuate a change of her sex designation in her state or federal records.

Plaintiff also seeks a change of sex designation on her state birth certificate and her federal social security records in conjunction with the requested name change. However, the name change procedure is different from that to change the sex designation. As noted above, according to the DHS Defendants' motion, "the West Virginia Health Statistics Center will change the sex listed on an individual's birth certificate upon the submission of a form which includes a physician's attestation that the individual's sex designation should be changed" using a form that is available and accessible to Plaintiff on its website. [ECF No. 13 at 7]. Apparently, however, at least at the time of the briefing of these motions, Plaintiff had not taken advantage of that administrative process or demonstrated an attempt to exhaust that administrative remedy, which is available to all West Virginia-born citizens, regardless of gender status or criminal history. [*Id.*] Consequently, Plaintiff cannot show a denial of due process or equal protection on this basis and has failed to demonstrate an injury in fact caused by the DHS Defendants because

17

the State has not been presented with the opportunity to review a proper request for a change of sex designation.

Similarly, Defendant O'Malley asserts that Plaintiff has not exhausted the SSA's available administrative remedies concerning her requested changes to her social security records. Specifically, his motion contends that Plaintiff has not alleged or demonstrated that she submitted a request for change of name or sex designation, or a new social security card and number, and properly exhausted the various administrative steps to receive a final determination thereon under the SSA's regulations. [ECF No. 30 at 5-6; *see also* Forbush Declaration, ECF No. 29, Ex. A at 2-3]. O'Malley further contends that this failure to exhaust administrative remedies requires the dismissal of Plaintiff's claims against him and the SSA for lack of jurisdiction. *See El v. Comm'r of Social Security*, No. 1:17-cv-279-MW-GRJ, 2018 WL 795736, at *2 (N.D. Fla. Jan. 18, 2018) (failure to follow all procedures for requesting a name change under the social security laws and regulations before filing a civil action constitutes a failure to exhaust administrative remedies and requires dismissal of civil action), *report and recommendation adopted*, 2018 WL 797430 (N.D. Fla. Feb. 8, 2018); s*ee also Xi-Amaru v. Director and/or Comm'r of Social Security Admin.*, No. 18-cv-7028 (BMC) (RLM), 2019 WL 319393 (E.D.N.Y. Jan. 24, 2019) (plaintiff's failure to exhaust administrative remedies through receiving a final decision from the Commissioner of the SSA regarding an application for a name change prior to filing a civil action required dismissal of the civil action). [ECF No. 30 at 6].

Beyond summarily contending that she has written to the SSA for forms (which are apparently available on its website) and received no response, Plaintiff does not contest O'Malley's assertion that she has failed to exhaust these available remedies. Accordingly, it is undisputed that Plaintiff has failed to exhaust the required and available administrative remedies and, consequently, cannot demonstrate an injury in fact caused by O'Malley or the SSA stemming from the failure to change her sex designation in her social security records. Thus, I **FIND** that Plaintiff's claims against O'Malley and the SSA must also be dismissed for lack of jurisdiction.

    C.    Other grounds for dismissal of Plaintiff's claims against O'Malley and the SSA.

Defendant O'Malley's motion to dismiss further asserts that Plaintiff's constitutional claims are barred by sovereign immunity and that her claims under § 1983 and the ADA fail to state a plausible claim for relief because neither § 1983 nor the ADA apply against the federal government or its officials. [ECF No. 30 at 3-5, 7-90]. He further contends that Plaintiff's complaint fails to state a plausible claim of discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* However, because I have determined that subject matter jurisdiction is lacking over Plaintiff's claims against each of the named defendants, I **FIND** it unnecessary and inappropriate to further consider Defendant O'Malley's other arguments for dismissal.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that Defendants' Motions to Dismiss [ECF Nos. 13, 25, and 29] are **GRANTED** and Plaintiff's Petition to Amend Birth-Assigned Sex Designation and Birth-Assigned Name on Birth Certificates and Social Security Card (ECF No. 15) is **DENIED**. It is further **ORDERED** that Plaintiff's Verified Complaint [ECF No. 1] and this civil action are **DISMISSED WITHOUT PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: August 1, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE